IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| PATE FLAGSHIP, LLC, and, <br> SEALY, LLC, <br><br>       Plaintiffs, <br><br> v. <br><br> CYPRESS EQUITIES SOUTHEAST, LLC, <br> CHRISTOPHER C. MAGUIRE, <br> SCOTT HARRINGTON, and <br> CARLYLE-CYPRESS TUSCALOOSA I, LLC, <br><br>       Defendants. | 7:14-cv-00387-JEO |

## MEMORANDUM OPINION

Before the court are the defendants' motions to dismiss the plaintiffs' amended complaint. (Docs. 24, 26, 32).[1] The motions have been fully briefed. Upon due consideration, the court finds that the motions are due to be granted.

## BACKGROUND

Plaintiffs Pate Flagship, LLC ("Pate Flagship") and Sealy, LLC ("Sealy") entered into a Purchase Agreement[2] with Cypress Equities Southeast, LLC ("Cypress Equities"), Christopher

---

[1] Document 24 is defendant Carlyle-Cypress Tuscaloosa I, LLC's motion to dismiss. Document 26 is defendants Cypress Equities Southeast, LLC and Scott Harrington's "Joinder in the Motion to Dismiss Amended Complaint and Brief in Support." Document 32 is defendant Christopher C. Maguire's "Joinder in the Motion to Dismiss Amended Complaint and Brief in Support" as well as his "Supplemental Motion to Dismiss" the Amended Complaint for the plaintiffs' failure to serve him within 120 days of the filing of the Complaint. Also before the court is Carlyle-Cypress's Motion for Oral Argument (document 45), which is mooted by the court's rulings herein.

[2] The Purchase Agreement is located at document 24-1 in the Court's electronic record of this case.

C. Maguire ("Maguire"), and Scott Harrington ("Harrington")[3] for approximately 35 acres of real property in Tuscaloosa, Alabama, on May 28, 2005.  The Purchase Agreement was later amended on September 27, 2005.  Some time after the execution of the Purchase Agreement, Cypress Equities assigned all rights under the Purchase Agreement to Carlyle-Cypress Tuscaloosa I, LLC ("Carlyle Cypress").

The Purchase Agreement, as amended, provided:

(e) <u>Enhancement Interest</u>.  As additional part of the purchase price[,][Cypress Equities] agrees to pay [plaintiffs] a sum equivalent to one-half of the Enhancement Interest created on the Property as and when received by [Cypress Equities].  For all purposes of this Agreement, "Enhancement Interest" shall be all TIFF[4] money or any other funds received by [Cypress Equities] from any governmental entity or agency for, or TIFF money or any other funds spent by any governmental entity or agency (in lieu of the receipt by [Cypress Equities] of TIFF money or any such other funds from any governmental entity or agency), directly or indirectly on, the proposed development, or the construction of any infrastructure, landscaping or improvements of any kind whatsoever, during the proposed development of the Property.

(Doc. 24-1 at 3).

In June 2008, the City of Tuscaloosa made a $1.5 million payment to Carlyle-Cypress for developer public infrastructure improvements.  (*See* Doc. 24-4).  Because the City's payment was money "received ... from" or "spent by" a governmental entity during the "proposed development of the property," Carlyle-Cypress paid one-half of the amount received to the plaintiffs.  (Doc. 25

---

[3] Individual defendants Maguire and Harrington guaranteed Cypress Equities' obligations under the contract.

[4] The parties agree that "TIF" is an abbreviation commonly used in the area of municipal finance to refer to "tax-increment financing."  Tax-increment financing is "[a] technique used by a municipality to finance commercial developments usually involving issuing bonds to finance land acquisition and other up-front costs, and then using the additional property taxes generated from the new development to service the debt." (Doc. 25 at 14, n.1; Doc. 37 at 11-12)(quoting *Black's Law Dictionary* 1502 (8th ed. 2004)).

at 7-8).

On December 22, 2005, President George W. Bush signed the Gulf Opportunity Zone Act of 2005. The Act exempted from taxation the interest paid on certain bonds, referred to as GO Zone bonds, used to finance private development projects in areas affected by Hurricane Katrina. *See* Pub. L. No. 109-135 (relevant provision codified at 26 U.S.C. § 1400N(a)).

The plaintiffs assert that "[b]ecause of their tax exempt status, as qualified private activity bonds under the Internal Revenue Code, [GO Zone bonds] were issued at significantly lower interest rates than other taxable bonds or conventional financing"; and that any interest charges saved through the use of GO Zone bonds are "Enhancement Interests," to which they are entitled to one-half of the saved amount. (Doc. 20 at ¶¶14-15). The plaintiffs further contend that the defendants "applied for and received certain cash payments or services in kind from the City of Tuscaloosa" that constitute "Enhancement Interests" to which they are entitled to one-half. (Doc. 20 at ¶¶ 17-18).

Ultimately, the plaintiffs contend that by taking the position that the aforementioned "savings" and "certain cash payments" are not Enhancement Interests as defined by the Purchase Agreement, the defendants have "anticipatorily breached their contractual obligations." (Doc. 20 at ¶ 20). Consequently, the plaintiffs have sued the defendants for Accounting and Breach of Contract (Count I) and Declaratory Judgment (Count II). (Doc. 20 at 7-8). The defendants assert that all the claims fail as a matter of law for various reasons. (Docs. 24, 26, 32). Each contention will be addressed below.

## STANDARD OF REVIEW

Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE authorizes a motion to dismiss

on the grounds that a complaint's allegations fail to state a claim upon which relief can be granted. A complaint must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The defendants have filed their motions to dismiss arguing that the plaintiffs' allegations fail to state a claim upon which relief can be granted. Such a motion tests only the sufficiency of the claim set out in the pleadings. *Harris v. Proctor & Gamble Cellulose Co.*, 73 F.3d 321, 324 (11th Cir. 1996). Thus, the " 'issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986) (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)). When ruling on a motion to dismiss, the court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1380 (11th Cir. 2010). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Nor is it proper to assume that the plaintiff can prove facts it has not alleged or that the defendants have violated the law in ways that have not been alleged. *Twombly*, 550 U.S. at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level ...." *Id.*

Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, its "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted).

## DISCUSSION

The defendants argue that the plaintiffs' amended complaint is due to be dismissed for a variety of reasons.  The court agrees, as set out herein.

### A.    Breach of Contract

The defendants offer four bases for their assertion that the plaintiffs have failed to state a claim for breach of contract on the GO Zone bonds.  Because the court agrees with the defendants that "any savings on interest payments could not be an enhancement interest," it need not address the other alternative arguments.[5]  (Doc. 25 at 13).  Additionally, the defendants argue that the plaintiffs have failed to state a claim on the purported Enhancement Interests provided by the City of Tuscaloosa.  (*Id.* at 18).

#### 1.    The GO Zone Bonds

Neither party disputes that the Purchase Agreement and Addendum are a valid contract. When interpreting a contract, the court first looks to the plain language of the contract and determines whether that language is ambiguous.  "[A] court should give the terms of the agreement their clear and plain meaning and should presume that the parties intended what the

---

[5] The defendants also argue that: (1) the parties could not have intended Enhancement Interest to include interest saved from the use of Go Zone bonds when Go Zone bonds did not even exist at the time the Purchase Agreement and Addendum were executed; (2) the plaintiffs failed to allege additional facts needed to establish that interest savings were an enhancement interest; and (3) the plaintiffs' claim is untimely.

terms of the agreement clearly state." *Ex parte Dan Tucker Auto Sales, Inc.*, 718 So. 2d 33, 36 (Ala. 1998) (citing *Pacific Enters. Oil Co. (USA) v. Howell Petroleum Corp.*, 614 So. 2d 409 (Ala. 1993)). The parties do not dispute the applicable law concerning contracts; however, they disagree as to its application in this case. The plaintiffs "believe the contract unambiguously requires payment of one half of the benefits received or spent relating to the G[O] Zone bonds..." Doc. 37 at 9). The defendants counter that "the alleged interest savings on GO Zone bonds are not within th[e] contractual definition." (Doc. 25 at 11).

    As set out previously, the Addendum defines an Enhancement Interest as "all TIFF money or any other funds received by [defendants] from any governmental entity or agency for, or TIFF money or any other funds spent by any governmental entity or agency ...." (Doc. 24-2 at 2-3). In an effort to broaden the meaning of "Enhancement Interest," the plaintiffs argue that "[t]he contractual language unambiguously provides that [they] are entitled to half of any *benefit* to the Defendants or any *benefits* given by the government, direct or indirect." (Doc. 37 at 11). This misreading of the plain contract language seems to be where the plaintiffs' argument goes awry. The contract does not define "Enhancement Interest" as any "benefit" at all. Instead, it plainly states that "Enhancement Interest" shall be all "TIFF *money* or any other *funds*" "received by the defendants" or "spent by" the government. The court agrees with the defendants that this distinction is fatal to the plaintiffs' position. The court is unwilling to broaden the plain language of contract to include "benefits." Thus, the plaintiffs' assertion that amounts potentially saved by the defendants as a result of lower interest rate bonds are Enhancement Interests fails. Nothing in the plain language of the contract contemplates amounts saved. The defendants'

motion to dismiss is due to be granted as to the GO Zone Bonds.[6]

## 2. "Enhancement Interests" Created by City of Tuscaloosa

The plaintiffs also allege that the defendants "applied for and received certain cash payments or services in kind" from the City of Tuscaloosa that also constitute "Enhancement Interests." (Doc. 20 at ¶ 17). The plaintiffs cite specific requisition numbers (9, 15, 21, 54, and 60) to which they purport to be entitled to one half of the value. (*Id*. at ¶ 18). Additionally, the plaintiffs assert that they are entitled to one half of "the right of way acquisitions made by the city to widen the streets to accommodate the project" and "the funds Carlyle-Cypress received for the water line extension." (*Id*.)

The defendants argue, however, that the plaintiffs have failed to plead their claims sufficiently to show that any benefit allegedly provided by the City of Tuscaloosa falls within the contractual definition of Enhancement Interest. (Doc. 25 at 21). Specifically, the defendants assert that the plaintiffs do not allege facts showing that any of the Enhancement Interests provided by the City of Tuscaloosa were "spent on the proposed development, or the construction of any infrastructure, landscaping or improvements of any kind whatsoever," or that they were "received during the proposed development of the property." (*Id*. at 22).

The plaintiffs retort that "[g]overnment enhancements that did not pay for a physical benefit to property were unambiguously included in the definition of Enhancement Interest[;]" and that the defendants' claim to the contrary is "without support of contractual language or

---

[6]To the extent the plaintiffs cite to and quote from statements made in the Congressional Record about the Gulf Opportunity Zone Act, the court is not swayed. The "statutory text, not the legislative history," controls. *Exxon Mobil Corp. v. Allapattah Services, Inc*., 545 U.S. 546, 568 (2005).

law." (Doc. 37 at 19). In arguing this point, the plaintiffs note that the defendants have already reimbursed them for one half of the funds received by the City for road widening, turn lanes and other items that were not physically present upon the property. (Doc. 37 at 20). The court finds that the plaintiffs are, once again, missing the point.

The defendants do not assert, as the plaintiffs seem to infer, that the benefits the plaintiffs speak of could not possibly fall within the contractual definition of Enhancement Interests. Instead, the defendants simply argue that the plaintiffs have failed to plead with specificity in their Amended Complaint *how* the alleged benefits fall within the definition. While the court must accept the factual allegations in the complaint as true, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Speaker*, 623 F.3d at 1380 (11th Cir. 2010); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010); *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678-79. Nor, as set out previously, is it proper to assume that the plaintiff can prove facts it has not alleged or that the defendants have violated the law in ways that have not been alleged. *Twombly*, 550 U.S. at 563 n.8.

The plaintiffs' mere assertion that the listed requisitions are Enhancement Interests does not, in fact, make them such. Without more than the conclusory allegation that the benefits are "Enhancement Interests," the plaintiffs have failed to state a claim for breach of contract regarding the same. The defendants' motion to dismiss is due to be granted as to the purported benefits provided by the City of Tuscaloosa.

### B.     DECLARATORY JUDGMENT

In Count II, the plaintiffs aver that "there is a justiciable controversy under the Purchase Agreement ... due to the GO Zone Bonds and due to certain benefits received ... from the City of

Tuscaloosa." (Doc. 20 at ¶ 27). Additionally, the plaintiffs aver that they "are entitled to a declaratory judgment declaring what constitute[s] Enhancement Interests under the Purchase Agreement and requiring Defendants to pay one-half the value of all said Enhancement Interests to Plaintiffs, now and in the future." (Doc. 20 at ¶28). The defendants argue that they cannot meet this standard. (Doc. 25 at 24).

In order for this court to grant declaratory relief, the plaintiffs would have to "establish that there was a violation, that there is a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law." *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000). Because the court has already found that the plaintiffs have failed to state a claim for breach of contract based upon the GO Zone Bonds or any alleged benefits provided by the City of Tuscaloosa, the plaintiffs' claim for declaratory judgment concerning the same is due to be dismissed as well. At this juncture, the plaintiffs have not established a violation of the Purchase Agreement; and, therefore, have not established a legitimate case or controversy. As such, the defendants' motion to dismiss is due to be granted as to the plaintiffs' claim for declaratory judgment. Additionally, the plaintiffs have not alleged any irreparable injury or the inadequacy of a legal remedy. Finally, they have offered no factual allegations supporting such a legal conclusion.

### C.    ACCOUNTING

As part of their breach of contract claim, the plaintiffs aver that "[i]n equity[,] [they] are entitled to an order requiring Defendants to account to Plaintiffs for all Enhancement Interests received, or promised, or anticipated," because the defendants are in sole possession of the documents that would allow the plaintiffs to know what amount they might be due under the

Purchase Agreement. (Doc. 20 at ¶¶ 23-24). The defendants argue, in part, that this claim must fail because it is "incidental to other relief." (Doc. 25 at 26 (quoting *Radenhausen v. Doss*, 819 So. 2d 616, 619 n.1 (Ala. 2001)).

The plaintiffs offer nothing in support of their conclusory allegation that they are entitled to an accounting. In essence, the plaintiffs' claim for an accounting amounts to a hunch that the defendants may have received Enhancement Interests for which they have not paid the plaintiffs their share. As such, the plaintiffs have failed to state a claim for an accounting; and the defendants' motion to dismiss is due to be granted.

## CONCLUSION

Premised on the foregoing, the defendants' motions to dismiss (docs. 24, 26, 32) are due to be granted in full.

**DONE**, this the 26th day of February, 2015.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge